Joseph A. Meckes  (State Bar No. 190279)
joseph.meckes@squirepb.com
Noriyuki Shimoda (State Bar No. 176973)
noriyuki.shimoda@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111
Telephone:      +1 415 954 0200
Facsimile:       +1 415 393 9887

David S. Elkins (State Bar No. 148077)
david.elkins@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304
Telephone:      +1.650.856.6500
Facsimile:       +1.650.843.8777

Attorneys for Plaintiffs
TEIKOKU SEIYAKU CO., LTD. and
TEIKOKU PHARMA USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEIKOKU PHARMA USA, INC., a California corporation, and TEIKOKU SEIYAKU CO., LTD., a Japan corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ENDO PHARMACEUTICALS, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Teikoku Pharma USA, Inc. ("TPU") and Teikoku Seiyaku Co., Ltd. ("TSC") (collectively "Teikoku"), for their Complaint against defendant Endo Pharmaceuticals, Inc. ("Endo" or "Defendant"), allege as follows:

COMPLAINT

**THE PARTIES**

1. Plaintiff TSC is a Japan corporation with its principal place of business in Higashikagawa, Kagawa, Japan. TSC is a specialty pharmaceutical company that develops and makes enhanced pharmaceutical products based on its transdermal drug delivery technologies. TSC's drug delivery technologies include the technology used in Lidoderm®, an innovative lidocaine-containing pain patch for treatment of post-herpetic neuralgia ("PHN").

2. Plaintiff TPU is a California corporation with its principal place of business in San Jose, California. TPU is a wholly-owned subsidiary of TSC.

3. Defendant Endo is a Delaware corporation with its principal place of business in Chadds Ford, Pennsylvania. Endo markets and distributes the Lidoderm® patch in the United States.

**NATURE OF THE ACTION**

4. This is an action for breach of contract. Endo agreed to use any recovery from a settlement to reimburse Teikoku for out-of-pocket costs and expenses (including attorneys' fees) incurred in pursuing patent infringement claims against third parties. Despite receiving a generous recovery through just such a settlement, Endo now refuses to reimburse Teikoku's out-of-pocket expenses.

**JURISDICTION AND VENUE**

5. The Court has subject matter over this dispute pursuant to 28 U.S.C. §1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Endo, a corporation, is subject to personal jurisdiction in this judicial district.

**INTRADISTRICT ASSIGNMENT**

7. This Action is appropriately assigned to the San Jose Division of this Court because a substantial part of the events and/or omissions which give rise to the claims alleged below in San Jose, California

**FACTUAL BACKGROUND**

8. In the late 1980s and early 1990s, TSC developed an innovative medicinal patch used for treating post-herpetic neuralgia ("PHN"), a painful complication arising from herpes zoster (commonly known as shingles). The patch is currently sold in the United States under the brand name Lidoderm®.

9. From the time of its introduction at the end of 1999 through the introduction of generic competition in 2013, Lidoderm® enjoyed robust growth and high profitability, resulting in sales of over $1 billion per year (i.e., a "blockbuster" drug) at its apex.

10. On October 27, 1998, the United States Patent and Trademark Office issued United States Patent No. 5,827,529 (the "'529 Patent") to TSC, as assignee. The '529 Patent covers Lidoderm®.

11. On March 19, 1999, the United States Food and Drug Administration (the "FDA") approved a New Drug Application ("NDA") under section 505(b) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(b)) for Lidoderm®. TPU is the owner of, and is responsible for, the Lidoderm® NDA.

12. Following issuance of the '529 Patent, TPU undertook to have the '529 Patent listed in the FDA publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (referred to as the "Orange Book") with respect to Lidoderm®.

13. On November 23, 1998, Teikoku and Endo entered into a Supply & Manufacturing Agreement, which has been subsequently amended several times (the "Supply Agreement"). The Supply Agreement granted Endo, among other things, the exclusive right under the NDA, the '529 Patent and Teikoku's other intellectual property rights to market and sell Lidoderm® in the United States.

14. On April 10, 2007, Teikoku and Endo entered into a letter agreement entitled "Arrangements to Address a Challenge to Lidoderm® under Paragraph IV of Section 505(b)(2), and other Intellectual Property Matters" (the "Letter Agreement"). A copy of the Letter Agreement is attached hereto as Exhibit A.

15. The Letter Agreement provides, among other things, Endo with various rights in the prosecution and defense of patent infringement claims, particularly those brought to enforce TSC's patent rights against third parties who file certifications of non-infringement or patent invalidity pursuant the provisions of the Hatch Waxman Act. Such certifications are submitted by generic drug manufacturers in connection with Abbreviated New Drug Applications ("ANDAs") and are commonly referred to as "Paragraph IV certifications" or "Paragraph IV challenges" in reference to 21 U.S.C. §355(j)(2)(A)(vii)(IV) where the basis for such certifications are codified into law.

16. In the Letter Agreement, Teikoku conferred upon Endo the exclusive right "to institute, prosecute and control a patent infringement action against" a third party in TSC's and TPU's names (a "Suit"), subject only to limited exceptions. In exchange for these rights, Endo agreed as follows:

> Endo shall pay for the costs and expenses of the Suit (including costs and expenses incurred by TPU and/or TSC in connection with the Suit solely at the request of Endo), except for TPU's and TSC's costs and expenses incurred by them in connection with the Suit without request from Endo, which shall be TPU's and TSC's respective sole responsibility.

Notwithstanding the foregoing allocation of expenses, however, the parties agreed that Endo would reimburse Teikoku's expenses if Endo enjoyed any recovery as a result of a Suit:

> Any recovery obtained as a result of the Suit, whether by judgment, award, decree or settlement will first be applied to reimbursement of each party's out-of-pocket costs and expenses (including attorneys' fees) in bringing the Suit, and Endo will be entitled to 100% of the remaining balance, unless otherwise agreed in writing by the parties.

17. From Lidoderm®'s introduction at the end of 1999 through today, Endo has acted as the exclusive distributor of Lidoderm® in the United States. Endo has publicly attributed the success of Lidoderm® to the merits of Lidoderm® itself, and not as a result of Endo's marketing efforts.

18. On or about January 14, 2010, Watson Laboratories sent Teikoku a notice stating that it had submitted an ANDA to the FDA seeking approval to manufacture, use or sell a generic

1  version of Lidoderm® prior to the expiration of the '529 patent.  With that notice, Watson also
2  included a Paragraph IV certification stating Watson's opinion that its proposed generic patch
3  would not infringe any claim of the '529 Patent and that the '529 Patent was invalid.

4  19.     On February 19, 2010, Endo and Teikoku filed suit against Watson Laboratories in
5  the United States District Court for the District of Delaware, captioned *Endo Pharmaceuticals*
6  *Inc., et al. v. Watson Labs., Inc. et al.* Case No. 1:10-cv-00138-GMS (the "Watson Litigation").
7  The Watson Litigation was a "Suit" as that term was defined in the Letter Agreement and was
8  controlled by Endo as prescribed by the Letter Agreement.

9  20.     The Watson Litigation culminated in a bench trial before District Judge Gregory
10 M. Sleet of the District of Delaware in February 2012.

11 21.     On May 28, 2012, after post-trial briefing, but before the trial court had issued a
12 decision on the merits, the parties entered into a Settlement and License Agreement (the
13 "Settlement Agreement").

14 22.     As of that date, Teikoku incurred in the Watson Litigation unreimbursed out-of-
15 pocket costs and expenses (including attorneys' fees) of $2,313,496.99.

16 23.     Through the Settlement Agreement, Endo and Teikoku agreed to release the
17 claims they had asserted against Watson in the Watson Litigation and to other consideration.  In
18 return, among other things, Watson agreed to pay Endo a royalty equal to 25% of all gross profits
19 enjoyed by Watson from the sale of generic Lidoderm® for a defined period of time.  At the time
20 the parties executed the Settlement Agreement, it was uncertain whether Watson would ever
21 make any royalty payments to Endo as Watson's proposed generic product had not, at that time,
22 been approved by the FDA.

23 24.     On August 23, 2012, Watson received approval from the FDA on its ANDA for a
24 generic version of Lidoderm®.  Watson began marketing its generic 5% lidocaine patch on
25 September 15, 2013.

26 25.     From September 15, 2013 to the present, Endo received royalty payments from
27 Watson of over $100 million, an amount substantially exceeding the combined expenses incurred

1 by Endo and Teikoku in bringing the Watson Litigation. These royalty payments constitute a

2 "recovery obtained as a result of the Suit" as that term in used in the Letter Agreement.

3     26.    Although Teikoku has demanded reimbursement of the expenses it incurred in

4 bringing the suit, Endo has refused to so reimburse Teikoku.

## FIRST CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

7     27.    Teikoku incorporates each of the preceding paragraphs 1 through 26 as if fully set

8 forth herein.

9     28.    The Letter Agreement constitutes a valid contract between Endo, on one hand, and

10 Teikoku, on the other.

11     29.    Teikoku has performed any and all obligations or duties owed to Endo under the

12 Letter Agreement.

13     30.    Under Paragraph 4 of the Letter Agreement, "[a]ny recovery obtained as result of

14 the Suit, whether by judgment, award, decree or settlement will be first applied to reimbursement

15 of each parties out-of-pocket costs and expenses (including attorneys' fees) in bringing the Suit."

16     31.    Endo and Teikoku brought a "Suit" against Watson (i.e., the Watson Litigation)

17 pursuant to which Teikoku incurred out-of-pocket costs and expenses (including attorneys' fees)

18 of $2,313,496.99.

19     32.    As a result of the Watson Litigation, Endo has received a recovery in the form of

20 royalty payments from Watson of over $100 million, an amount substantially exceeding the

21 combined out-of-pocket expenses of both Endo and Teikoku.

22     33.    Endo has breached the Letter Agreement by failing and refusing to use the

23 recovery it received as a result of the Watson Litigation to reimburse Teikoku for the out-of-

24 pocket costs and expenses it incurred in bringing the Suit.

25     34.    As a result of Endo's breach, Teikoku has suffered damages in the amount of

26 $2,313,496.99, exclusive of interest.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs TSC and TPU pray for a judgment against defendant Endo as follows:

(i) For damages in the amount of $2,313,496.99;

(ii) For interest on the judgment in the statutory amount;

(iii) For costs of suit incurred herein; and

(iv) Such other and further relief as the Court deems reasonable and just.

Dated: June 17, 2014                                      SQUIRE PATTON BOGGS (US) LLP


By:  */s/ Joseph A. Meckes*
　　　　　Joseph A. Meckes

Attorneys for Plaintiffs
TEIKOKU SEIYAKU CO., LTD. and
TEIKOKU PHARMA USA, INC.